# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| B.J.R., A MINOR CHILD, ) | |
| ) | |
| Plaintiff, ) | Case No. 2:04CV00066 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| JO ANNE B. BARNHART, ) | By: James P. Jones |
| COMMISSIONER OF SOCIAL ) | Chief United States District Judge |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

In this child's social security case, I remand the case to the Commissioner for consideration of new evidence.

## *I. Background.*

This action if filed on behalf of a minor, B.J.R., challenging the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for supplemental security income ("SSI") benefits under title XVI of the Social Security Act, 42 U.S.C.A. §§ 1381-1383f (West 2003 & Supp. 2005) ("Act"). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 1383(c)(3).

My review is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists,

this court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.*

The plaintiff filed for benefits on August 14, 2002, alleging disability since May 1, 1999. The claim was denied initially and on reconsideration, and a request for a hearing was timely filed. The plaintiff received a hearing before an administrative law judge ("ALJ") on September 18, 2003. By decision dated October 2, 2003, the ALJ found that the plaintiff was not disabled within the meaning of the Act. The Appeals Council denied review, and the ALJ's opinion constitutes the final decision of the Commissioner.

The parties have briefed the issues, and the case is now ripe for decision.

## II. Facts.

B.J.R. was fourteen years old at the time of the ALJ's decision and was in the seventh grade. He claims disability based upon headaches, asthma, attention deficit hyperactivity disorder ("ADHD"), a leaning disability, poor memory, poor school grades, and chronic sinus problems.

-2-

In determining whether B.J.R. is eligible for benefits, the ALJ reviewed medical records from Chanda Varandani, M.D., as well as B.J.R.'s report cards and records from his teachers. In addition, the ALJ heard testimony from B.J.R.'s mother.

Based upon the evidence, the ALJ determined that B.J.R.'s ADHD and learning disorder are severe, but concluded that these impairments do not meet or equal any listed impairment.

### III. Analysis.

The plaintiff contends that this case should be remanded for evaluation of new and material evidence. For the following reasons, I agree. In light of my decision on this issue, it is not necessary for me to consider the plaintiff's other arguments.

A district court may remand a social security case on the basis of newly discovered evidence, a "sentence six" remand, when the plaintiff satisfies four prerequisites. 42 U.S.C.A. § 405(g) (West 2003 & Supp. 2005); *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985). First, the evidence must be "new." *Borders*, 777 F.2d at 955 (holding "new" evidence is "'relevant to the determination of disability at the time the application was first filed and not merely cumulative'" (quoting *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983))). Second, it must be material. *Id*. Third, there must be good cause for the "failure to submit the evidence

when the claim was before the Secretary." *Id*. Fourth, the claimant must make "'at least a general showing of the nature' of the new evidence." *Id*. (quoting *King v. Califano*, 599 F.2d 597, 599 (4th Cir.1979)).

Here, the plaintiff asserts that the new and material evidence is a report completed by Suzanne Augustine, M.A., which concludes that the plaintiff has a type of dyslexia known as dysphonetic. (Pl's Br. at 7.) I find that this additional medical evidence meets the criteria to be considered "new" in order to warrant remand.

First, the evidence as to the severity and type of learning disorder is new, and it is relevant to the determination of disability at the time the application was first filed. Although the plaintiff has always had a learning disorder–which the ALJ found to be severe (R. at 17)–Augustine was the first to diagnose the plaintiff with dyslexia. Augustine states "[B.J.R.] has been, and will continue to be, unable to develop phonetic decoding skills consistently enough to use this method of reading to any great degree [because of his dysphonetic dyslexia]." (Ex. A at 4.) In addition, these records are from a period after the ALJ's decision. Thus, I find that this medical evidence is new.

Next, Augustine's report, testing, and diagnoses are substantially more detailed in explaining the severity of the plaintiff's learning disorder than the records upon which the ALJ relied. In determining that the plaintiff had no limitation relative to

the domain of acquiring and using information, the ALJ relied heavily on a February 1998 IQ test on which the plaintiff was found to be functioning in the average range of cognitive abilities. (R. at 19.) While it was proper for the ALJ to give great weight to this evidence, the IQ test did not resolve many of the questions about the plaintiff's learning disorder. Indeed, many of the ALJ's questions at the hearing regarded the apparent inconsistency between the plaintiff's IQ score and his learning problems. (R. at 196-97.) The ALJ stated, "[w]e had an IQ test done previously, as you know, and I think it's fair to say that it was at least average . . . why hasn't [B.J.R.] done better . . . do you have any idea? What do they tell you?" (*Id.*) The plaintiff's mother responded, "[w]ell, for some reason–what you're saying, he doesn't comprehend. It doesn't register or something . . . I don't know the problem . . . I don't know what you would call it. I don't know." (R. at 197.) In addition to performing an IQ test on the plaintiff, Augustine performed various reading mastery tests and tests for reading-spelling patterns. (Ex. A. at 2.) Based on these and other tests, Augustine concluded that B.J.R. had "dysphonetic dyslexia, with a central auditory processing disorder" (Ex. A at 5), and that B.J.R. had particular weaknesses in "speed of mental operation, freedom of distractability, and especially in auditory processing." (Ex. A at 6.) Augustine's detailed report and test results would be helpful in clarifying the severity

and type of B.J.R.'s learning disorder, and are thus material because if presented to the Commissioner they might reasonably have resulted in a different decision.

Lastly, the plaintiff must show good cause for not previously producing this report, and a general showing of its nature. Augustine's report occurred after the Appeals Council's decision and therefore could not have been previously submitted. The plaintiff's brief and Augustine's attached report clearly show the nature of the evidence. Therefore, I find that the plaintiff has shown good cause for not previously submitting medical evidence as to dyslexia.

*IV. Conclusion.*

For the foregoing reasons, the claim will be remanded to the Commissioner for further administrative proceedings in accordance with this opinion.

An appropriate final judgment will be entered.

DATED: September 18, 2005

/s/ JAMES P. JONES
Chief United States District Judge